# NOVEMBER 1920

### E. L. MILLER v. THE STATE.

No. 5849.   Decided November 3, 1920.

Rehearing denied December 1, 1920.

1.—Embezzlement—Indictment—Corporation—Surplusage.

Where, defendant was indicted under Article 1416, Vernon's Penal Code, and it was alleged that he was a clerk and employee of a corporation, there was no error in the trial court, in passing upon defendant's motion to quash, to hold that the use of the word "employee" was surplusage, where it occurred in said indictment.

2.—Indictment—Embezzlement—Capacity of Accused—Fiduciary Relation.

Where, upon trial of embezzlement, under Article 1416, Vernon's Penal Code, the capacity in which the defendant was acting for his employer was alleged as clerk, in such manner as to bring it within the terms of the statute, and further alleged the fiduciary relations existing, and that it was his duty to receive and care for certain moneys of the corporation, the indictment was sufficient.

3.—Same—Insufficiency of the Evidence—Clerk—Cashier—Variance.

Where, upon trial of embezzlement under Article 1416, Vernon's Penal Code, it was alleged that defendant was a clerk and employee of a certain corporation (trial court holding that the word "employee" was surplusage because it is not named in the statute), and the evidence on the trial showed that he was a cashier and not a clerk, and the proof entirely rebutted the proposition that he was ever employed in such capacity, the variance between the proof offered and the allegation in the indictment was fatal and reversible error.

4.—Same—Evidence—Other Transactions—Intent—Rules Stated.

Where, upon trial of embezzlement under Article 1416, Vernon's Penal Code, there was a vigorous cross-examination of other employees of the alleged corporation, suggesting the appropriation of the alleged embezzled money by such other employees, and other facts in the instant case, there was no error in permitting the State to show other transactions on the part of defendant of like kind as the one charged in the indictment, to show intent or guilty knowledge, limiting said evidence to its proper sphere. Following Fry v. State, 86 Texas Crim. Rep., 73.

5.—Same—Evidence—Letters.

Where, upon trial of embezzlement, under Article, *supra* the State introduced the contents of two letters found in defendant's trunk when arrested, which, although in defendant's handwriting, were neither dated, signed, nor addressed, and nothing in either letter referred to any of the facts of any transaction transpiring while defendant was employed by the alleged corporation, etc., the same were inadmissible in evidence.

6.—Same—Circumstantial Evidence—Charge of Court.

Where, on trial of embezzlement under Article 1416, *supra*, the main fact sought to be proved was a matter of inference, the case was one of circumstantial evidence, and a failure of the court to charge on circumstantial evidence, is reversible error. Following Ward v. State, 10 Texas Crim. App., 513, and other cases.

7.—Same—Rehearing—Indictment—Different Counts.

This court, in its original opinion, should have stated that the indictment herein contains seven counts, and that upon defendant's motion the State elected the seventh count in which defendant was charged as a clerk or employee of a corporate company. This would have been clearer but in no wise affects the decision.

8.—Same—Words and Phrases—Clerk—Employee—Embezzlement—Corporation.

The word "employee" not appearing in the statutory expression of who may commit embezzlement for a corporation, it is evident that the legal terms used in describing defendant's attitude and relationship in the indictment, being thus narrowed down to the allegations that he was a clerk, there must be evidence which showed him to be a clerk, else the court will be forced to the conclusion of a variance between the indictment and the proof.

9.—Same—Clerk—Employee—Cashier—Legal Definitions.

Where, the motion for rehearing insisted that, while appellant was known and designated by those who employed him, and who were associated with him in business, as a cashier, that he was, notwithstanding, a clerk, and that the question for decision is not, what a man is called, but what he is, held, that there is a clear distinction between a cashier and a clerk, both in view of the lexicographers and the leading definition given in the law books, and under the facts of the instant case.

10.—Same—Evidence—Letters—Case Cited.

Upon motion for rehearing, the court is unable to find any parallel between the case cited by appellant and the facts in the instant case, with regard to the introduction of letters found in appellant's possession when arrested. Distinguishing Thompson v. State, 35 Texas Crim. Rep., 523.

**11.—Same—Circumstantial Evidence—Charge of Court—Rule Stated.**

The *factum probandum* in embezzlement cases is the fraudulent conversion and appropriation of the property in question, and though it be established by positive testimony that said property came into the possession of the defendant, this would not relieve the case of being one of circumstantial evidence, and the court should have submitted a charge on circumstantial evidence as requested. Following Stewart v. State, 71 Texas Crim. Rep., 480, and other cases.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of embezzlement under Article 1416, Vernon's Penal Code; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Chambers & Watson,* for appellant.—On question that the indictment must allege the capacity and relationship of employment: Johnson v. State, 21 Texas, 775; Clark v. State, 8 Texas Crim. App., 350; Gilliard v. State, 182 S. W. Rep., 1136.

On question of no relationship between clerk and employee made penal by statute: State v. McLane, 43 Texas, 404; Roby v. State, 41 Texas Crim. Rep., 152.

On question of necessity of proving that embezzled money came in defendant's possession by his employment as clerk: Brady v. State, 21 Texas Crim App., 660; Griffin v. State, 4 id., 414; Gaddy v. State, 8 id., 128; Huntsman v. State, 12 id., 629. Fitch v. State, 58 Texas Crim. Rep., 366. Fleming v. State, 62 id., 653. Gilliard v. State, *supra.*

On question of court's failure to charge on circumstantial evidence: Hunt v. State, 7 Texas Crim. App., 212; Barr v. State, 10 id., 507; Ward v. State, 10 id., 297; Anderson v. State, 213 S. W. Rep., 639.

On question of other offenses: Denton v. State, 42 Texas Crim. Rep., 429; Clark v. State, 59 id., 246; Davenport v. State, 89 S. W. Rep., 1077; Bowman v. State, 155 S. W. Rep, 940; Harris v. State, 117 id., 839.

On question of introduction of letters: Rix v. State, 33 Texas Crim. Rep., 353; McColloh v. State, 44 id., 152; Cowan v. State, 56 S. W. Rep., 751; Duckworth v. State, 57 id., 665.

*Alvin M. Owsley,* Assistant Attorney General, and *D. A. McAskill,* District Attorney, and *W. S. Anthony,* Assistant District Attorney, for the State.—On question of sufficiency of the indictment: Lamb v. State, 49 Texas Crim. Rep., 443; Sturgis v. Bank, 11 Ohio State, 153; State v. Reubalo, 9 South. Rep., 465; Gantt v. Cox, 48 Alabama, 922; Reg. v. Bailey, 12 Cox C. C., 56; State v. Yeiter, 54 Kan. 277; 20 Corpus Juris, p. 440.

On question of exculpatory statement: McKinney v. State, 48 Texas Crim. Rep., 404; Powdrill v. State, 155 S. W. Rep., 231.

LATTIMORE, Judge.—Appellant was convicted in the 37th District Court, of Bexar County, of the offense of embezzlement of property of the value of more than fifty dollars, and his punishment was fixed at two years confinement in the State penitentiary.

Appellant urged various objections to the indictment in this case, none of which we think are sufficient. Aritcle 1416, Vernon's Penal Code, which names those persons who may be held guilty of embezzlement from a corporation, enumerates "any officer, agent, clerk, attorney at law or in fact." The word "employee" is not used in this connection in the statute, and we infer that the trial court, in passing upon this motion to quash, held that the use of the word "employee" was surplusage where it occurred in said indictment. The accused was indicted for embezzlement, it being alleged that he was a clerk and employee of the Brown Cracker and Candy Company, a corporation.

The capacity in which the accused was acting for his employer, when the property came into his possession, in an embezzlement case, must be alleged in such manner as to bring it within the terms of the statute. In the instant case, the allegation that appellant was the clerk of the Brown Cracker and Candy Company, a corporation, is an allegation of a capacity named, and is, therefore, sufficient under the statute. Likewise, we think the further allegation in the indictment, that the property of said corporation alleged to have been embezzled, "came into the possession, and was then and there under the care of the said E. L. Miller *by virtue* of his said employment and relation as . . . clerk . . . as aforesaid," was a sufficient charging that a fiduciary relationship existed, and that it was appellant's duty to receive and care for said money.

There are a great many errors complained of in the able brief filed by appellant's counsel, but in our view of the case, it is only necessary to notice some of the more important ones presented. A careful examination of the statement of facts discloses that the manager of the Brown Cracker and Candy Company, at San Antonio, under whom appellant worked for a number of years, testified in so many words that appellant never did work for the Brown Cracker and Candy Company in the capacity of clerk. All the witnesses spoke of appellant as the cashier or bookkeeper. While a cashier might be included under the term "agent," and in some instances might be an officer of a corporation, we are unable to find anywhere that he is classed as a "clerk." The designation of appellant in the indictment as an "employee" having been eliminated as surplusage, and the evidence failing to support the allegation of "clerk," there would seem to be a fatal variance between the proof offered and the allegations of the indictment. If one be charged as a "clerk," and

the proof entirely rebut the proposition that he was ever employed in such capacity, we have no alternative but to hold that the pleading and the proof do not correspond.

On the trial, much testimony was offered in behalf of the State, showing other transactions on the part of the appellant of like kind as the one charged in the instant case. This was objected to. We think there was no error in admitting proof of those transactions. By vigorous cross-examination of other employees of the said corporation, as to their access to the books, and their opportunity to get the money, the embezzlement of which is charged against appellant; their need of such property; the character and amount of their investments, etc., were brought out by appellant, manifestly to create the impression upon the jury of the improbability of appellant's connection with the appropriation of the property, and suggesting the appropriation thereof by such other employees. We think further that the very nature and character of the employment of the appellant, and of the circumstances surrounding the transaction and necessarily relied on by the State to make its proof of guilt, would make proof of other similar transactions admissible. Said corporation did a large business locally, and in its trade territory. Large sums of money, both cash and checks, came into appellant's hands, and after proper entry, endorsement, etc., should have gone to the bank to the credit of said corporation. Appellant kept the books, and had charge of the moneys received, made out the deposit slips, kept the bank books, and except when an auditor came at intervals of some months, and checked the books, no one took actual oversight of the actions of appellant in the performance of his duties. In a business so conducted, one occupying a position such as appellant, might easily mislay a check, or overlook an entry, or erroneously O. K. a miscalculated collection slip turned in by a driver, and thus be guilty of no wrong should an error be discovered, but proof of the continuation of such happenings might rebut any presumption of innocence as to one independent transaction. Again, when appellant left the employ of said corporation without any notice to them, he seems to have left the State. No charge had been made against him; no suspicion attached to him; no property of said company was found on him when arrested, and practically all the proof offered against him, was the manipulation of the books, cash account, checks, etc., of which he had charge before leaving. In order to show intent or guilty knowledge, we think evidence of such other transactions was admissible, subject to proper instruction in the charge, as to the purpose of such testimony, and that before the jury could consider any of said transactions as evidence, they must believe beyond a reasonable doubt that defendant's guilt in such transactions was shown. See Section 166, Branch's Ann. P. C. pp. 622-623; Vernon's C. C. P. for authorities; Fry v. State, 86 Texas Crim. Rep., 73, 215 S. W. Rep., 560.

The State proved over objection, the contents of two letters found in appellant's trunk when arrested in California. Said letters were shown to be in appellant's handwriting. They were neither dated, signed, nor addressed. Nothing in either referred to any of the facts of any transaction transpiring while appellant was employed by the Brown Cracker and Candy Company. Not a word in either of said letters, so far as we are able to see, related to any transaction under investigation. We think the letters were inadmissible.

An exception was taken to the court's failure to charge on circumstantial evidence. We think such charge should have been given. No one saw this appellant appropriate this money. No confession or admission of his appears in the record to take the case out of the rule of circumstantial evidence. He had the lawful charge of money and property prior to his disappearance, and after he had gone, by the process of checking and auditing, it was discovered that shortages existed. The State claimed that appellant was the party responsible for these shortages. Appellant pleaded not guilty to the charge. The issue in the case then became the unlawful conversion by appellant of money belonging to his principal, and to establish this conclusion, the State introduced a number of facts, from which the guilt of the accused might be inferred, but no positive proof thereof. If the main fact sought to be proved is a matter of inference, the case was one of circumstantial evidence under all the authorities. Ward v. State, 10 Texas Crim. App., 513; Lee v. State, 14 Texas Crim. App., 217; Matthews v. State, 17 Texas Crim. App., 475; Fuller v. State, 24 Texas Crim. App., 597; Pace v. State, 41 Texas Crim. Rep., 208; Jones v. State, 54 Texas Crim. App., 37; Stewart v. State, 71 Texas Crim. Rep., 480, 160 S. W. Rep., 381.

This disposes of the material issues raised in this appeal. For the errors mentioned, the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

December 1, 1920.

LATTIMORE, JUDGE.—The State has filed its motion for rehearing. We might have stated in our opinion on original presentation that the indictment herein contains seven counts, and that appellant's motion to require the State to elect upon which count it would proceed having been sustained, the prosecution proceeded upon only the seventh count; also that in said court, appellant was charged as the "clerk or employee of an incorporated company, etc." This would have made clearer our statements and reasoning in said opinion.

The word "employee" not appearing in the statutory expression of who may commit embezzlement from a corporation, it would at once be evident that the legal terms used in describing appellant's attitude and relationship in the indictment, being thus narrowed down to the allegation that he was a clerk, we would be held to the necessity of finding facts in testimony which showed him to be a clerk, else we would be forced to the conclusion of a variance between the indictment and the proof. The motion for rehearing insists that while appellant was known and designated by those who employed him, and who were associated with him in business, as a cashier, that he was, notwithstanding, a clerk, and that the question for decision is not, what a man is called, but what he is. Appellant cites the Standard Dictionary, page 352, wherein, among other definitions of a clerk, appears the following: "A person who is employed to keep accounts, or do writing; a hired assistant in an office, counting-house, library or the like; colloquially in the United States made to include salesmen or shop assistants." However, the motion also cites page 292 of the same work, wherein cashier is defined as "One who is a custodian of money, especially one who has charge of receipts, disbursements, cash on hand, and ordinary financial transactions of a bank or mercantile house or the like." The Century Dictionary defines a clerk as "(1) A clergyman or ecclesiastic, (2) A person who could read; a scholar; (3) A parish officer; (4) One employed to keep accounts or records; a scribe, an accountant; as the clerk of the crown; a town clerk; (5) An assistant in a shop or store." The same work defines a cashier as "one who has charge of money; a cash keeper; the officer who has charge of the payments and receipts of money of a bank or mercantile company."

It would seem from what we have thus said that there is a clear distinction between a cashier and a clerk, in the view of the lexicographers. Neither term is given as synonymous of the other, nor are the definitions such as that we might hold them equivalent terms. Bearing in mind then that in the record before us, appellant is always spoken of as a "cashier," and nowhere as a "clerk," and that the men charged with the duty of employment in the establishment where he worked, stated that he had never worked for them as a clerk, and having seen that the two positions are of different definitions and duties, as stated by the dictionaries, we turn to the legal authorities cited in the motion. Volume 20, Corpus Juris, page 440, is cited as upholding the proposition that "clerk" and "cashier" are interchangeable terms. The case of Yeiter v. State, 54 Kansas, 277 is quoted as sustaining the text. Examining the Yeiter case, it appears that he was prosecuted as the agent of the Bank of Ingalls, a firm composed of two men, and it was stated in the information that one Yeiter was employed by said firm as agent, and was designated as "cashier, etc." The Kansas court held that Yeiter could not be convicted under that clause of the statute seemingly referred

to in the pleadings, but quoted a statute forbidding embezzlement from a private person, under which it was held that if prosecuted he might be convicted; and, after quoting said statute, said court observed that the terms "clerk" and "servant" as used in said statute, included a cashier. The statement was purely *obiter dictum*, but same refers to two Ohio decisions as its authority—Gravatt v. State, 25 Ohio, 162, and State v. Kusnick, 45 Ohio. Neither of these decisions in any way sustains the statement in the opinion of the Kansas Court referred to. In the Gravatt case, it appeared that he was a sewing-machine agent, selling machines and collecting for them upon a stipulated salary. The question was raised and decided affirmatively that he was a servant within the terms of the Ohio embezzlement statute. The term "cashier" was not mentioned in the record.

Kusnick was a partner in a private bank, in the other case mentioned, and the trial court instructed an acquittal upon the theory of partnership. The State excepted, and upon appeal the exception was sustained, but there is nothing in the case indicating that a clerk or cashier are interchangeable terms.

Citation is also made in the motion to other cases holding that where one is regularly employed in one capacity, but occasionally serves in another, he may be guilty of an embezzlement committed in the temporary employment. We find none of the citations applicable.

Article 10 of our Penal Code states that unless otherwise specially defined, all words used in said Code are to be taken and construed in the sense in which they are understood in common language. The object of this is manifestly in order that persons charged with crime might know in well understood terms what they were charged with. Without offense, we might assume that those associated with appellant in the instant case, spoke our common language. Of the number of witnesses introduced by the State, not one of them understood appellant to be a clerk, or called him a clerk, but all of them spoke of him as a "cashier," and when asked the express question, the manager of the business said that he was not a clerk. The forbiddance of this statute is against any officer, agent, clerk, or attorney, and we see no reason why the language of the indictment might not follow that of the statute. That one is not a clerk is not equivalent to saying that he is not an agent or an officer. We might further observe that the books are full of cases in which there is no particular attempt to name the exact capacity in which the accused was employed, wherein indictments have been sustained because the facts state therein showed such relationship within the comprehension of the statute.

Objecting to our holding in regard to the letters found in appellant's possession when arrested, the motion urges the admissibility of said letters, under authority of Thompson v. State, 35 Texas Crim. Rep., 523. In the Thompson case, the effort of the State was to show

that Thompson and one Whatley committed a joint robbery. What-
ley was killed after the indictment was returned against him and
Thompson, and a letter was found on his body, of unmistakable bear-
ing on the case. The ruling by this Court that said letter was prop-
erly admitted, is the one referred to. We think the Court in that
case correctly admitted said letter, but are unable to find any sup-
port in such holding for a contention that the letters in question were
admissible. We have again examined said letters, in view of the in-
sistence of the State, but are unable to find anything in them refer-
ring even remotely to facts pertinent to this case.

It is contended further that we erred in holding this a case of cir-
cumstantial evidence. The State cites a line of authorities in homi-
cide cases, holding that when the fact of the killing is proven by
positive testimony, that because the State had to resort to circum-
stances to prove the intent of the accused, would not make it a case
of circumstantial evidence. We are unable to see the relevancy of
these citations. The *factum probandum* in embezzlement cases is the
fraudulent conversion and appropriation of the property in ques-
tion, and though it be established by positive testimony that said
property came into the possession of the accused, this would not re-
lieve the case of being one of circumstantial testimony, when the en-
tire question as to whether or not said property was so converted as
to make it embezzlement, was one of deduction from the circum-
stances in evidence.

The motion will be overruled.

*Overruled.*